UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
AHMED ELNENAEY,

                      Plaintiff,                        **MEMORANDUM AND ORDER**

             v.                                         20-CV-5430 (RPK) (LB)

JP MORGAN CHASE BANK, N.A., YORAM
NACHIMOVSKY, PLLC, YORAM
NACHIMOVSKY ESQ., 2939 AVENUE Y
TENANTS CORPORATION, ROSICKI,
ROSICKI & ASSOCIATES, P.C.,
PARAMOUNT LAND, INC., and JAMES L.
DIMON *a/k/a* JAMIE DIMON,

                      Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      *Pro se* plaintiff Ahmed Elnenaey brings claims for violating civil RICO and conspiracy to violate RICO against JPMorgan Chase Bank, N.A., Jamie Dimon ("Chase Defendants"), Yoram Nachimovsky, PLLC, 2939 Avenue Y Tenants Corporation, Yoram Nachimovsky, Esq. ("Nachimovsky Defendants"), Rosicki, Rosicki & Associates, P.C., Paramount Land, Inc., Cynthia G. Rosicki, Esq., and Thomas Peter Rosicki, Esq. ("RRA Defendants"). Defendants move to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim. For the reasons stated below, defendants' motions to dismiss for failure to state a claim are granted, and the Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims.

## BACKGROUND

      The following factual allegations are taken from plaintiff's complaint, documents integral to plaintiff's complaint, and documents amenable to judicial notice.

1

A. **Factual Background**

In 2005, plaintiff bought the title to stock in a cooperative apartment unit (the "Unit"). *See* Compl. ¶ 65 (Dkt. #1). Defendant Nachimovsky represented the co-op as attorney and transfer agent during the closing. *Id.* ¶ 66.

The next year, plaintiff took out a $100,000 home equity line of credit ("HELOC") from Chase to renovate the unit. *Id.* ¶ 70. He refinanced his Chase HELOC with Washington Mutual ("WaMu") on October 19, 2007. *Id.* ¶¶ 43, 72. Under the terms of plaintiff's agreement with WaMu, the loan was converted into a $168,000 fixed-rate loan. *Id.* ¶¶ 45, 48.

WaMu later sold its interest in plaintiff's loan to Chase. *Id.* ¶ 73. Chase then allegedly made various changes to the loan arrangement, including closing the existing loan, establishing a new loan (the "4294 Fixed Loan"), and attempting to collect on the new loan in a manner that plaintiff challenges as unlawful. In particular, plaintiff alleges that Chase charged him an usurious interest rate and failed to extend credit to which he was entitled. *Id.* ¶¶ 51, 53, 54, 56-57. That behavior began on January 1, 2009 and continued until April 2011, when plaintiff defaulted on his loan. *Id.* ¶¶ 56, 121, 123.

Plaintiff also alleges irregularities in the procedures that defendants used in connection with plaintiff's default and the sale of the Unit. In the months immediately after plaintiff's default, Chase sent plaintiff letters with information on how to remedy his delinquency. *See id.* ¶¶ 84-85. These letters referred to plaintiff's account as "Account: 000000010726568" (the "6568 Account"). *Ibid.* According to plaintiff, Chase created the 6568 Account to disguise the fact that it was seeking to collect an unlawful debt. *Id.* ¶ 128. Plaintiff further claims that Chase's creation of the 6568 Account amounts to money laundering or honest-services fraud. *Id.* ¶¶ 126-28, 134-36.

Plaintiff replied to these notices with a letter stating he did not recognize the account and asking to have it closed. *Id.* ¶¶ 84-86. In response, Chase demanded payment and threatened to foreclose on the Unit. *Id.* ¶ 87. Chase then hired RRA as a third-party debt collector. *Id.* ¶ 88. RRA sent plaintiff a series of letters about the 6568 Account to collect the debt. *Id.* at ¶¶ 88-89. Plaintiff sent RRA a reply disputing the existence of the debt, requesting verification of the 6568 Account, and informing RRA that there was no such loan. *Id.* ¶ 91. RRA then sent plaintiff a letter stating that his security interest in the stock and lease of the Unit would be put up for auction on September 20, 2012. *Id.* ¶ 89.

Plaintiff alleges that the auction resulted in "Chase liquidat[ing] invisible collateral to a non-existent loan." *Id.* ¶ 93. He further states that he lost title to his stock in the Unit on September 20, 2012. *Id.* ¶¶ 92-93.

On July 25, 2016, Nachimovsky bought the Unit from Chase for $50,000. *Id.* ¶¶ 79, 81, 103. Plaintiff alleges that in making this transaction, Chase and Nachimovsky dealt in property derived from specified unlawful activities for purposes of the RICO statute. *Id.* ¶¶ 129-32.

At the time of closing, plaintiff still lived in the Unit. *Id.* ¶¶ 79, 81. On September 2, 2016, Nachimovsky brought eviction proceedings in Housing Court to obtain possession of the unit. *Id.* at Ex. 3 (Dkt. #1-4).

Plaintiff then filed suit in New York Supreme Court against Nachimovsky, alleging, amongst other things, fraud. *Id.* at Ex. 20 at 4, 8 (Dkt. #1-21). In 2018, the court directed plaintiff to pay Nachimovsky monthly for his occupancy. *See* Chase Mot. to Dismiss, Ex. I (Dkt. #17-11). Later, the court granted Nachimovsky's motion to have plaintiff removed from the Unit. *Id.* at Exs. M, P (Dkt. ##17-15, 17-18). As of the start of this litigation, plaintiff had not yet been removed from the Unit. *See id.* at Ex. Q (Dkt. #17-19).

3

### B. Procedural History

On November 3, 2020, plaintiff filed suit against the defendants in federal court. Plaintiff alleges that defendants are liable to him for violating civil RICO and conspiracy to commit civil RICO. He seeks damages, a declaratory judgment, and injunctive relief. *See* Compl. ¶¶ 139, 153-61.

The defendants have filed motions to dismiss for lack of subject-matter jurisdiction and failure to state a claim. *See* Chase Mot. to Dismiss (Dkt. #17); Nachimovsky Mot. to Dismiss (Dkt. #24); RRA Mot. to Dismiss (Dkt. #26). Plaintiff filed a motion to strike evidence submitted by RRA from the record. Pl.'s Letter Mot. to Strike (Dkt. #32).

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)) (internal quotation marks omitted). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that

4

are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint on a motion to dismiss, the court must accept all facts alleged in a complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id.* at 678-79.

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted). *Pro-se* status, however, does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)) (internal quotation marks omitted).

## DISCUSSION

Although the Court has subject-matter jurisdiction to consider plaintiff's complaint, the statute of limitations bars his federal claims. The Court declines to exercise supplemental jurisdiction over any of plaintiff's state-law claims.

### I. The Court has Subject-Matter Jurisdiction Over Plaintiff's Claims.

This Court has subject-matter jurisdiction over plaintiff's complaint.

#### a. Standing

The RRA Defendants' argument that plaintiff lacks standing to bring his RICO claims is without merit. *See* RRA Mem. of L. in Supp. of Mot. to Dismiss 6-7 (Dkt. # 26-1) ("RRA Mem."). To demonstrate standing, "a plaintiff must show (i) that he suffered an injury in fact that is

5

concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citation omitted). Here, plaintiff alleges that defendants unlawfully charged him usurious interest rates and ultimately deprived him of his property interest in the Unit, among other harms. Compl. ¶¶ 51, 53, 54, 56-57. While the RRA defendants argue that plaintiff lacks standing to challenge the assignment of the Unit from one party to another, *see* RRA Mem. 6-7 (citing Compl. ¶¶ 38-39), plaintiff's RICO claim does not depend on challenging the validity of such an assignment.

### b. The *Rooker-Feldman* Doctrine

Defendants err in contending that the Court lacks jurisdiction over plaintiff's claims under the *Rooker-Feldman* doctrine. *See* Nachimovsky Mem. of L. in Supp. of Mot. to Dismiss 16-18 (Dkt. #24-1) ("Nachimovsky Mem."); RRA Mem. 7-9; Chase Mem. of L. in Supp. of Mot. to Dismiss 10-12 (Dkt. #17-1) ("Chase Mem."). That doctrine establishes "that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)) (internal quotation marks omitted). But it is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In contrast, it does not bar a plaintiff from "present[ing an] independent claim . . . that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* at 293 (citation and internal quotation marks omitted).

Accordingly, for a claim to be barred, "four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Sung Cho,* 910 F.3d at 645 (citing *Hoblock*, 422 F.3d at 85).  Because *Rooker-Feldman* applies only when a plaintiff challenges injuries "caused by the state-court judgment," *id.* at 647 (citation and internal quotation marks omitted), the doctrine lacks any application when the injury of which the plaintiff complaints preceded the state-court litigation at issue, *see McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007).

*Rooker-Feldman* does not apply here because plaintiff complains of injuries that were not caused by a state-court judgment.  Plaintiff alleges that Chase's usurious loan rates and failure to extend him credit resulted in him defaulting on his loan, Compl. ¶¶ 121-124, 139, and that Chase then unlawfully sold (and Nachimovsky unlawfully acquired) the Unit, *id.* ¶¶ 79, 81, 103, 129-32. Plaintiff further states that he lost title to his stock in the Unit on September 20, 2012. *Id.* ¶¶ 92-93.  These asserted injuries occurred before any state-court case began.  *Id.* ¶ 93.

Defendants err in suggesting that *Rooker-Feldman* applies because plaintiff previously challenged the validity of the Unit's sale in state court litigation.  Nachimovsky Mem. 17-18; RRA Mem. 8-9; Chase Mem. 12.  *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Saudi Basic Indus. Corp.*, 544 U.S. at 293.  When, as here "a federal plaintiff presents some independent claim," even if it is "one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state

7

law determines whether the defendant prevails under principles of preclusion." *Ibid.* (citation, alterations, and ellipses omitted).

### c. *Colorado River* Abstention

Abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), is not appropriate because plaintiff's state and federal lawsuits are not parallel. *See* Chase Mem. 12-14. Under *Colorado River*, federal courts may abstain from exercising jurisdiction "due to the presence of a concurrent state proceeding." *Colorado River*, 424 U.S. at 818. *Colorado River* abstention is "an extraordinary and narrow exception to the duty . . . to adjudicate a controversy." *Id.* at 813. Such abstention is only appropriate if the state and federal proceedings are parallel, *see Dittmer v. Cnty of Suffolk*, 146 F.3d 113, 117-18 (2d Cir. 1998), meaning that the parties are "substantially the same, litigating substantially the same issues in both actions," *Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006) (citation and internal quotation marks omitted).

Plaintiff's federal-court action is not parallel to his state lawsuit. Simply put, "the issues and relief sought" are not the same, *E. Fordham DE LLC*, 804 F. App'x at 107 (citation omitted), because plaintiff's state case simply sought a declaratory judgment concerning title to the Unit, *see* Pl.'s Consolidated Mem. of L. in Opp'n to Defs.' Mots. to Dismiss 23-24, 26 (Dkt. #68) ("Pl.'s Opp'n"), while plaintiff's federal case seeks damages under RICO and challenges conduct beyond the Unit's sale and transfer, *see* Compl. ¶¶ 109-138. As several other courts have concluded, circumstances like these do not present parallel proceedings for purposes of *Colorado River*. *See, e.g.*, *Simmons v. Reich*, No. 19-CV-3316 (EK) (ST), 2020 WL 7024345, at *7 (E.D.N.Y. Nov. 30, 2020), *aff'd*, No. 20-4114, 2021 WL 5023354 (2d Cir. Oct. 29, 2021); *Sterling v. Deutsche Bank*

8

*Nat'l Tr. Co. as Tr. for Femit Tr. 2006-FF6, Mortg. Pass Through Certificates, Series 2006-F6*, No. 19-CV-205 (GBD) (KNF), 2019 WL 4686549, at *3 (S.D.N.Y. Sept. 26, 2019).

### d. *Younger* Abstention

Contrary to defendants' suggestions, abstention under *Younger v. Harris,* 401 U.S. 37 (1971) is not appropriate. RRA Mem. 9-10. The Supreme Court has explained that under *Younger*, federal courts must refrain from exercising jurisdiction over a lawsuit that seeks to enjoin "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citation and internal quotation marks omitted). But those "exceptional" cases, *ibid.* (citation and internal quotation marks omitted), are the extent of the *Younger* doctrine: "*Younger* mandates abstention only when the plaintiff seeks to enjoin ongoing state proceedings and only in the three instances identified in *Sprint*," *Disability Rts. New York v. New York*, 916 F.3d 129, 134 (2d Cir. 2019).

*Younger* abstention is unavailable here. Plaintiff is not seeking to enjoin an ongoing state proceeding. Instead, plaintiff seeks money damages under RICO, a declaratory judgment related to his loan agreement with Chase and his ownership of the Unit, and a permanent injunction preventing Chase from conducting certain future sales. Compl. ¶¶ 139, 156, 161. While the federal and state lawsuits involve overlapping issues, courts may not abstain under *Younger* "simply because a pending state-court proceeding involves the same subject matter" as a federal dispute. *Sprint*, 571 U.S. at 73.[1]

---

[1] I decline to dismiss plaintiff's lawsuit for want of subject matter jurisdiction on the theory that plaintiff's claims are so wholly insubstantial and obviously frivolous. *See* RRA Mem. 6-7 (citing *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 126 (2d Cir. 2016)). When a federal claim is "immaterial and made solely for the purpose of obtaining jurisdiction," or "wholly insubstantial" or "obviously frivolous," it will not give rise to federal-question jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). But

## II. Plaintiff's Federal Claims are Time-Barred.

Plaintiff claims that defendants violated the RICO statute, Compl. ¶¶ 109-41 and conspired to violate the RICO statute, *id.* ¶¶ 142-53.[2] These claims are time-barred, and plaintiff has not demonstrated an entitlement to equitable tolling.

### a. Statute of Limitations

Plaintiff's claims were not timely filed. Civil RICO and civil RICO conspiracy claims are subject to a four-year statute of limitations. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (citations omitted) (civil RICO); *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007) (citation omitted) (RICO conspiracy), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

These claims are governed by an "injury discovery" rule of accrual. Under that rule, "a plaintiff's action accrues against a defendant for a specific injury on the date that plaintiff discovers or should have discovered that injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (internal quotation marks omitted) (quoting *Bankers Tr. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988)). In other words, "the limitations period does not begin to run until [the plaintiff has] actual or inquiry notice of the injury." *Ibid*. Under the "separate-accrual rule," if a

---

the Supreme Court and Second Circuit have instructed that the adverbs "wholly" and "obviously" are "no mere throwaways," and that courts must not "collaps[e] the distinction 'between failing to raise a substantial federal question for jurisdictional purposes and failing to state a claim for relief on the merits.'" *Gallego*, 814 F.3d at 126 (quoting *Shapiro v. McManus*, 136 S. Ct. 450, 455 (2015)) (internal quotation marks and alteration omitted). Here, plaintiff may well fail to state a claim, but he has alleged the existence of a RICO enterprise and various RICO predicate acts. *See* Compl. ¶¶ 56-57, 122-24. The asserted deficiencies that the RRA defendants raise, *see* RRA Mem. 6-7, are more appropriately raised under Federal Rule of Civil Procedure 12(b)(6) than through a motion to dismiss on jurisdictional grounds.

[2] While plaintiff styles his requests for a declaratory judgment and for a permanent injunction as separate counts, these requests do not amount to separate causes of action. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012) ("[T]he [Declaratory Judgment Act] is procedural only . . . and does not create an independent cause of action.") (citations and internal quotation marks omitted); *KM Enterprises, Inc. v. McDonald*, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012) ("[A] request for injunctive relief is not a separate cause of action.") (citation and internal quotation marks omitted), *aff'd*, 518 F. App'x 12 (2d Cir. 2013).

10

plaintiff "[a]t a later date" suffers "a new and independent injury" from a RICO violation, "his right to sue for damages from that injury accrues at the time he discovered or should have discovered that injury." *Rhoades*, 859 F.2d at 1103. As a result, under the civil RICO statute, "a plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit." *Ibid.* To implement these principles, "[t]he first step in the statute of limitations analysis is to determine when the [plaintiff] sustained the alleged injury for which [he] seek[s] redress." *In re Merrill Lynch*, 154 F.3d at 59 (citation omitted). A court should "then determine when [the plaintiff] discovered or should have discovered the injury and begin the four-year statute of limitations period at that point." *Ibid.* (citation omitted).

Plaintiff's claims are untimely under this framework. Plaintiff alleges two groups of injuries: (1) his loss of business income and property and (2) his loss of title to the Unit. Compl. ¶ 139. Plaintiff lost his business income and property by October 2011, *ibid,* and lost title to the Unit by September 20, 2012, *id.* ¶¶ 92-93, 139. Accordingly, the statute of limitations for all of his RICO injuries had started running by October 2011 and had expired by October 2016. Because plaintiff did not file this lawsuit until November 2020, his claims are time-barred.

Plaintiff errs in contending that his RICO claim only accrued in May 2018, when plaintiff allegedly discovered that Chase closed his WaMu loan and created a new account. Pl.'s Opp'n 29. As explained above the statute of limitations accrues upon discovery of an injury—not when plaintiff learns the mechanism of an allegedly fraudulent scheme. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 149 (2d Cir. 2012); *e.g.*, *Williams v. Long Beach Mortg. Co.*, No. 19-CV-970 (NSR), 2020 WL 4735354, at *8 (S.D.N.Y. Aug. 14, 2020) (holding that a plaintiff's RICO claim accrued once she moved to vacate a foreclosure action, even though she did not learn of defendant's allegedly fraudulent scheme until eight years later). Given that all potential accrual

11

dates occurred more than four years before plaintiff filed suit in federal court, plaintiff's RICO claims are time-barred in the absence of tolling.

### b. Equitable Tolling

Plaintiff's claims cannot be resurrected through equitable tolling. "Equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citations, alterations, and internal quotation marks omitted). The party seeking such tolling bears the burden of showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States,* 865 F. 3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States,* 794 F.3d 347, 352 (2d Cir. 2015)) (internal quotation marks omitted). He may do so by demonstrating that a defendant "wrongfully concealed material facts relating to defendant's wrongdoing," but only if "the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period" and "plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch*, 699 F.3d at 157 (internal quotation marks omitted) (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)).

Plaintiff falls short of meeting these standards. Plaintiff suggests that Chase engaged in fraudulent concealment because the bank hid the fact that his original WaMu loan had been closed and replaced with the 4294 Fixed Loan by making the last four digits of the 4294 Fixed Loan match the last four digits of the old WaMu loan. *See* Pl.'s Opp'n 29; Compl. ¶ 78. In making this argument, plaintiff appears to acknowledge that he received documents from Chase showing that he had a new loan account number. *See* Pl.'s Opp'n 29; Compl. ¶ 78. But he suggests that he was misled about his account's status because he examined only the last four digits of the account

12

number on his bank documents. Even assuming that plaintiff's description of Chase's conduct met the requirements for fraudulent concealment, plaintiff's efforts would not be consistent with the "[r]easonable diligence" that "is a prerequisite to the applicability of equitable tolling," *Koch*, 699 F.3d at 157 (citation omitted), because there is no question that plaintiff could have discovered the allegedly concealed facts through a more-than-cursory review of his bank documents, *see, e.g.*, *Vayani v. 146 W. 29th St. Owners Corp.*, No. 16-CV-1774 (JGK), 2017 WL 3476046, at *9 (S.D.N.Y. Aug. 11, 2017) (refusing to equitably toll a claim because defendants did not fraudulently conceal information when the plaintiff should have known the information on his own), *aff'd*, 726 F. App'x 71 (2d Cir. 2018); *cf. Simmons*, 2020 WL 7024345, at *12 (declining to toll based on fraudulent concealment by banks when plaintiffs did not plead facts that would support a finding of diligence on their part, such as by alleging "that they requested mortgage statements or balance information from Defendants, or took any steps to investigate the interest rates they were being charged or precise balances they owed") (citation omitted).

Plaintiff alternatively argues that the statute of limitations should be tolled because Chase "lulled"' him into believing that it was not necessary to file a lawsuit in order to stay in the Unit. *See* Pl.'s Opp'n 27-29; Compl. ¶ 103. He relies on the fact that more than four years passed between the 2012 auction of the Unit and the 2016 lawsuit seeking his eviction. *Ibid.* But plaintiff attests that Nachimovsky served him with a 10-day notice to vacate around July 31, 2016, *see* Pl.'s Opp'n 31-32, and Nachimovsky brought eviction proceeding in Housing Court on September 2, 2016, *see* Compl. Ex. 3 (Dkt. #1-4). Even if plaintiff were entitled to tolling during a period in which defendants lulled him into believing he would be allowed to stay in the Unit, that period had ended more than four years before plaintiff filed his suit in November 2020. Plaintiff's claims therefore cannot be saved through equitable tolling.

### c. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments pertaining to the statute of limitations are meritless.

Plaintiff argues that the law-of-the-case doctrine bars defendants from bringing a statute-of-limitations defense because a state court found that the statute of limitations for plaintiff's state fraud claim against Nachimovsky had not expired. Pl.'s Opp'n 28. The law-of-the-case doctrine, which "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons," *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (citations and internal quotation marks omitted), has no application here. First, this federal lawsuit is not a "subsequent stage[]" of plaintiff's state case. *Ibid.* (citation omitted). Second, the statute-of-limitations question presented in this case is entirely distinct from the one presented in plaintiff's state lawsuit. The New York court appears to have determined that plaintiff's 2016 lawsuit relating to Nachimovsky's 2015 purchase of the Unit was timely under New York's six-year statute of limitations for fraud claims. Pl.'s Req. to Take Judicial Notice 19 (Dkt. #29) (citing N.Y. C.P.L.R. § 213(8) (McKinney)). The timeliness of plaintiff's earlier state lawsuit pressing a fraud claim does not control the timeliness of plaintiff's later federal lawsuit pressing a RICO claim.

For similar reasons, plaintiff errs in arguing that defendants are collaterally estopped from raising a statue-of-limitation defense because the state court decided that the statute of limitations did not bar his fraud claim. Pl.'s Opp'n 28. Collateral estoppel "bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding." *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003). As explained above, the state court did not decide the statute of limitations for the federal RICO claims brought in this separate lawsuit. Collateral estoppel therefore does not bar the defendants from raising a statute-of-limitations defense.

### III. The Court Declines to Exercise Supplemental Jurisdiction.

The Court declines to exercise supplemental jurisdiction over any state-law claims plaintiff brings. In his complaint, plaintiff "reserved" the right to bring a litany of state-law claims. *See* Compl. ¶ 162. Under 28 U.S.C. § 1367(c)(3), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006) (citations omitted). Although declining to exercise supplemental jurisdiction in such a case is not "absolutely mandatory," *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) (citation and internal quotation marks omitted), in "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 118 (2d Cir. 2013) (citation omitted) ("Once all federal claims have been dismissed, the balance of factors will usually point toward a declination" of supplemental jurisdiction.). Indeed, in some cases, particularly "where the federal claims ha[ve] been dismissed at a relatively early stage and the remaining claims involve[] issues of state law that [are] unsettled," the Second Circuit has "concluded that the exercise of supplemental or pendent jurisdiction [is] an abuse of discretion." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). Accordingly, as district courts frequently do in similar circumstances, this Court shall remand plaintiff's remaining claims to New York state court. *See, e.g.*, *Amador v. City of New York*, No. 20-CV-956 (RA), 2021 WL 2809541, at *2 (S.D.N.Y. July 6, 2021).

15

## CONCLUSION

Because plaintiff's claims are time-barred, defendants' motions to dismiss under 12(b)(6) are granted. Plaintiff's motions to strike are denied as moot. Because claims barred by the statute of limitations cannot be resurrected through "better pleading," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), leave to amend is denied as futile. Plaintiff's claims are accordingly dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: September 28, 2022
       Brooklyn, New York